T.C. Summary Opinion 2002-76

UNITED STATES TAX COURT

WALTER JAMES SIMS, JR. & SONIA GAIL TOLLIVER-SIMS, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1336-01S.                    Filed June 26, 2002.

Walter James Sims, Jr., pro se.

Jeffrey C. Venzie, for respondent.

DINAN, Special Trial Judge:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a deficiency in petitioners' Federal income tax of $743 for the taxable year 1998.

The sole issue for decision is whether petitioners received unreported discharge of indebtedness income in taxable year 1998. Respondent's adjustment to the amount of Social Security benefits includable in petitioners' gross income is computational and will be resolved by our holding on the issue in this case.

Some of the facts have been stipulated and are so found. The stipulations of fact and the attached exhibits are incorporated herein by this reference. Petitioners resided in Philadelphia, Pennsylvania, on the date the petition was filed in this case.

Petitioner husband (petitioner) applied for and received a Discover credit card in 1986. At this time, petitioner resided in Philadelphia and shared an address with his mother. In the following year, petitioner moved to Camden, New Jersey. Petitioner remained at this address until 1997 when he married petitioner wife and returned to a different address in Philadelphia. During 1999, petitioner's mother changed her mailing address from the address she had previously shared with petitioner.

The records of the financial institution holding petitioner's credit card account indicate that as of April 8, 1998, the credit card balance was $3,103.91. The company's

record dated September 26, 2001, indicates that a "1099-C" had been sent to petitioner "approx. 01/1999 for tax year 1998". As of September 26, 2001, the records indicate the account balance was $3,093.91, the amount "now due" was $0, and the "min pay" was $3,093.91.

In response to petitioner's inquiries, petitioner received a letter regarding his account dated April 27, 2001. This letter states that petitioner's last payment had been in 1993, and that "various collection attempts" had been made but had ceased in 1996. The letter further states that a Form 1099-C, Cancellation of Debt, had been filed in 1999 for taxable year 1998 and had been sent to petitioner's former address in Philadelphia. During 1998, petitioner was never insolvent and never filed for bankruptcy.

Petitioners filed a joint Federal income tax return for taxable year 1998. They did not report any discharge of indebtedness income. In the statutory notice of deficiency, respondent determined that petitioners received $3,103 of such income.

Gross income generally includes all income from whatever source derived including income from discharge of indebtedness. Sec. 61(a)(12). Debt is considered discharged the moment it is clear that it will not be repaid. Cozzi v. Commissioner, 88 T.C. 435 (1987). Determining when this moment occurs requires an

assessment of the facts and circumstances surrounding the likelihood of repayment. Id. "Any 'identifiable event' which fixes the loss with certainty may be taken into consideration." Id. at 445 (quoting United States v. White Dental Manufacturing Co., 274 U.S. 398, 401 (1927)).

Petitioners argue that petitioner was unaware of the credit card debt, and that he does not know when, if ever, the debt was discharged. Respondent primarily relies on the Form 1099-C issued to petitioners by the credit card company. Respondent was unable to produce a copy of the Form 1099-C sent to petitioners, and petitioners allegedly never received a copy due to petitioner's and petitioner's mother's changes in address around the relevant time frame.

Evidence in the record mainly serves to corroborate the issuance of the Form 1099-C and does nothing to independently establish that petitioner's debt was discharged, or the date of such a discharge. Indeed, it is not clear whether the debt was ever discharged. According to the credit card company's records, the debt remained listed on petitioner's account at least through September 2001. Although the company issued a Form 1099-C to petitioner, there was no indication in the record how the company determined that the debt had been discharged in 1998, or even if it ever made such a determination: The company merely stated that a Form 1099-C was sent to petitioner. More importantly,

assuming that there in fact was a discharge of indebtedness, the only identifiable event fixing the time of the loss with any certainty is the credit card company's cessation of debt collection activities in 1996, 3 years following petitioner's last payment. See <u>Cozzi v. Commissioner</u>, <u>supra</u>. There is nothing in the record to indicate any event between 1996 and 1998 which would have altered the status of the account as collectible or uncollectible. Based on the record before us, we find that petitioners did not have discharge of indebtedness income during 1998.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for petitioner</u>.